IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Ralph Ehresman and Jennifer Ehresman,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America and Raymond Egan in his personal capacity,<br><br>Defendants. | C/A No.: 0:25-cv-11273-SAL<br><br>**ORDER** |

Plaintiffs Ralph and Jennifer Ehresman (collectively, the "Ehresmans") sue the United States and Raymond Egan ("Egan"), an employee with the Social Security Administration ("SSA"), for violations of 42 U.S.C. § 1983 and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80. [ECF No. 1.] The Ehresmans' claims arise from allegations that Egan and other federal officials conspired with New York state officials to wrongfully prosecute Mr. Ehresman over a decade ago for stealing Social Security Disability Insurance benefits.

This matter is currently before the court for review of three Reports and Recommendations ("Reports") issued by United States Magistrate Judges Shiva V. Hodges and Thomas E. Rogers, III. [ECF Nos. 25, 43, 68.] For the reasons explained below, the court adopts the Reports; denies the Ehresmans' motion for entry of default, ECF No. 18; grants Defendants' motion to dismiss, ECF No. 27; denies the Ehresmans' motion to stay, ECF No. 39; denies the Ehresmans' motion to amend, ECF No. 55; and denies the Ehresmans' motion to consolidate, ECF No. 58. Additionally, the court affirms the orders granting Defendants' motion for leave to file a surreply, ECF No. 24, and denying the Ehresmans' motion to compel, ECF No. 65.

## I. BACKGROUND

### A. Mr. Ehresman's Initial Social Security Application and Criminal Conviction

Mr. Ehresman is a former New York City Police Department officer. [ECF No. 1 ¶ 16.] He retired in November 2001 after sustaining a line-of-duty injury to his right ankle. *Id.* ¶¶ 16–17. He first applied for Social Security Disability Insurance ("SSDI") benefits in January 2002. *Id.* ¶ 20. His initial application was denied, but he successfully appealed the denial with the help of attorney Raymond Lavallee ("Lavallee"). *Id.* ¶¶ 20, 22.

On December 15, 2004, an Administrative Law Judge ("ALJ") found Mr. Ehresman disabled as of November 20, 2001, the date he retired from the NYPD, due to depression and gout. [ECF Nos. 1 ¶ 22; 37-1 at 5, 7.] As relevant here, the ALJ relied in part on a function report and treatment notes from Mr. Ehresman's treating psychiatrist, Dr. Edward Sodaro ("Dr. Sodaro"). [ECF No. 37-1 at 5.] Dr. Sodaro opined that Mr. Ehresman suffered from "depression with a loss of interest in prior normal activities of daily living, apprehension about the future, episodes of derealization and depersonalization, excessive worry, feelings of hopelessness, social isolation, difficulty sleeping[,] and fatigue." *Id.* The SSA continued Mr. Ehresman's benefits after he underwent a disability review in July 2009. [ECF No. 27-1 at 4.]

In January 2014, Mr. Ehresman and 101 other individuals, mostly retired New York City police officers and firefighters, were indicted as part of an investigation by the SSA Office of Inspector General ("OIG") and the Manhattan District Attorney's Office ("Manhattan DA") into a disability-benefits fraud scheme orchestrated by Lavallee. [ECF No. 1 ¶¶ 46, 74.] According to the Inspector General, the scheme worked as follows: retirees from the New York City Police and Fire Departments would contact one of two recruiters "known within the New York City law enforcement community as men who could assist individuals in obtaining disability or retirement

benefits." *Social Security Disability Fraud Scheme in New York: Hearing Before the Subcomm. on Soc. Sec. of the H. Comm. on Ways & Means*, 113th Cong. (2014) (statement of Patrick O'Carroll Jr., Inspector Gen., Soc. Sec. Admin.).[1] These recruiters instructed applicants on how to fabricate symptoms of psychiatric illness and connected them with a disability consultant who arranged the necessary medical treatment. *Id.* Lavallee then completed and filed the claims with the SSA as the applicants' attorney of record. *Id.* Once claims were approved, applicants paid the facilitators several months' worth of benefits in cash as a kickback. *Id.*

For his participation in the scheme, Mr. Ehresman was charged with second-degree grand larceny, in violation of N.Y. Penal Law § 155.40(1), and fourth-degree criminal facilitation, in violation of N.Y. Penal Law § 115.00(1). [ECF No. 37-2 at 33, 34.] He ultimately pleaded guilty to the grand larceny charge, admitting that he "st[ole] essentially by making false claims to Social Security." [ECF No. 27-2 at 6, 7.] He was sentenced to a three-year conditional discharge and ordered to pay a $5,000 fine. *Id.* at 13.

**B. The Manhattan DA's Civil Forfeiture Action**

A few days after Mr. Ehresman was indicted, the Manhattan DA commenced a civil forfeiture action against him to recover the nearly $400,000 in SSDI benefits he had received from the SSA. [ECF No. 27-3 at 15.] Mr. Ehresman failed to respond to the forfeiture complaint, and the Manhattan DA moved for default judgment. [ECF No. 27-4 at 3.] In connection with its motion, the Manhattan DA submitted a damages affidavit from Defendant Egan, who at the time served as the Assistant Regional Commissioner for Management and Operation Support for the SSA's New York Regional Office. [ECF No. 23-3 ¶ 1.] Egan provided an overview of how the SSDI program

[1] The court draws on the Inspector General's statement in recounting the facts because it was referenced and quoted in the complaint. *See Epstein v. World Acceptance Corp.*, 203 F. Supp. 3d 655, 662 (D.S.C. 2016).

works and attested to the total amount of SSDI benefits the SSA disbursed to Mr. Ehresman from 2004 through 2013. *Id.* ¶¶ 3–10, 12.

On April 20, 2018, the New York County Clerk of Court entered judgment against Mr. Ehresman for $552,881.95. [ECF No. 27-4 at 4.] This figure reflects the $399,504.90 sum Egan attested to,[2] plus $153,377.05 in interest that had accrued since January 2014. *Id.*

### C. Termination of Mr. Ehresman's Benefits and the SSA's 2023 Redetermination

In a letter dated January 13, 2014, the SSA informed Mr. Ehresman that his "benefits [had] been stopped due to an ongoing investigation." [ECF No. 1 ¶ 101.] A little over a week later, the SSA sent Mr. Ehresman another letter stating that it "d[id] not need to review [his] case at this time" and "w[ould] contact [him] later" if that were to change. *Id.* ¶ 103. According to the Ehresmans, the Manhattan DA advised the SSA the following month that redetermining the indicted beneficiaries' eligibility for benefits would not jeopardize its ongoing prosecution. *Id.* ¶ 104. Despite this assurance, the complaint alleges, the SSA stonewalled Mr. Ehresman's repeated inquiries into the status of his benefits and failed to conduct his redetermination for nearly a decade. *Id.* ¶¶ 105–06, 110–12, 115–30.

In February 2023, an ALJ issued a decision "fully favorable" to Mr. Ehresman. [ECF No. 34-2.] The ALJ did not consider Dr. Sodaro's function report or treatment notes, finding there was "reason to believe" the evidence was tainted by "fraud or similar fault." *Id.* at 5–6; *see* 42 U.S.C. § 405(u)(1)(B) ("When redetermining the entitlement . . . of an individual under this subchapter, the Commissioner of Social Security shall disregard any evidence if there is reason to believe that fraud or similar fault was involved in the providing of such evidence."). But the ALJ concluded

[2] Although the forfeiture complaint sought $399,754.90, Egan excluded from his calculation a $250 economic stimulus payment Mr. Ehresman received. [ECF No. 22-1 ¶ 12 n.1.]

that the remaining evidence was sufficient to "support[] a finding of disability as of December 15, 2004, the date of the prior award." [ECF No. 34-2 at 14.]

**D. The Ehresmans' Administrative Claims**

Nearly two years later, in January 2025, Mr. Ehresman and his wife each filed an administrative claim with the SSA for tort damages under the FTCA. [ECF Nos. 1 ¶ 15; 27-8 at 7–10.] In the section of the claim form titled "Basis of Claim," Mr. Ehresman wrote:

> This claim stems from the OIG's investigation of Lavellee's [sic] Social Security fraud scheme. The OIG in conjunction with [the SSA's Northeastern Program Service Center] caused Claimant's benefits to be abruptly discontinued without any explanation and caused Claimant to be arrested and prosecuted by the state authorities for stealing the benefits, to which he was entitled under the SSA (ie., his own property), in order to recover an overpayment which could not be recovered under the federal law, with the ultimate goal of impressing Congress with uncovering [a] large fraud scheme to secure additional funding and expand OIG's operations.

[ECF No. 27-8 at 7.] Mr. Ehresman sought $20,295,060 for "loss of property . . . in violation of his rights under the [Social Security] Act" and "severe emotional distress." *Id.* Ms. Ehresman, meanwhile, sought $10,000,000 for "loss of companionship, aid, society and services of her [husband]." *Id.* at 9. The SSA denied both claims on February 21, 2025. [ECF No. 27-9.] It explained that the claims were "precluded by section 205(h) of the Social Security Act," which divests federal courts of jurisdiction under 28 U.S.C. §§ 1331 and 1346 over "any claim arising under" Title II of the Social Security Act. *Id.*

**E. The Present Lawsuit**

The Ehresmans filed this lawsuit on August 20, 2025. [ECF No. 1.] The gravamen of the complaint is that Egan, the OIG, the Cooperative Disability Investigations Unit for New York,[3]

[3] "The Cooperative Disability Investigations (CDI) program is a key anti-fraud initiative that combats fraud within Social Security disability programs. . . . Each CDI unit consists of a[n] [OIG] special agent who serves as a team leader, and personnel from SSA, State disability determination

the Manhattan DA conspired to violate Mr. Ehresman's rights under the Social Security Act and to prosecute him for "stealing what was rightfully his." *Id.* ¶¶ 1, 6, 7. The Ehresmans assert claims against the United States for intentional infliction of emotional distress (Count One), malicious prosecution (Count Two), abuse of process (Count Three), false imprisonment and false arrest (Count Four), negligence per se (Count Five), and loss of consortium (Count Six). *Id.* ¶¶ 131–93. Against Egan, they assert claims for violations of the Due Process and Equal Protection Clauses of the Fourteenth Amendment (Counts Seven and Eight), as well as for malicious prosecution (Count Nine). *Id.* ¶¶ 194–226. They also assert a bill-of-attainder claim (Count Ten) against the SSA itself, which is not named as a defendant. *Id.* ¶¶ 227–35.

### 1. The First Report

On November 5, 2025, the Ehresmans filed an affidavit of service indicating that Egan had been served with the summons and complaint on October 27, 2025. [ECF No. 16-1.] Later that month, on November 25, 2025, they moved for entry of default against Egan under Federal Rule of Civil Procedure 55(a). [ECF No. 18.] They argued Egan had defaulted by failing to answer within 21 days of being served. *Id.* at 6; *see* Fed. R. Civ. P. 12(a)(1)(A)(i).

In a Report issued on December 18, 2025 (the "First Report"), Magistrate Judge Hodges disagreed. [ECF No. 25.] She concluded that Egan was not in default because he qualified for the 60-day answer deadline set forth in Rule 12(a)(3). *Id.* at 6–12; *see* Fed. R. Civ. P. 12(a)(3) ("A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer . . . within 60 days . . . ."). The Ehresmans object to this determination, as well as to Magistrate Judge

services (DDS), and State or local law enforcement partners." Off. Inspector Gen., Soc. Sec. Admin, *Cooperative Disability Investigations*, https://oig.ssa.gov/cdi/ (last visited Sept. 11, 2026).

Hodges's decision to grant Defendants leave to file a surreply in opposition to their motion. [ECF No. 25 at 7; ECF No. 28.]

**2. The Second Report**

On December 30, 2025, Defendants moved to dismiss the complaint under Rules 12(b)(1) and 12(b)(6). [ECF No. 27.] They argued, among other things, that (1) the court lacks jurisdiction over the § 1983 claims against Egan because he is a federal actor and (2) the Ehresmans' claims are in any event barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* at 11, 18–19, 24–25.

In response to Defendants' motion to dismiss, on January 24, 2026, the Ehresmans filed a motion to stay. [ECF No. 34.][4] They explained that in light of Defendants' *Heck*-bar argument, Mr. Ehresman had filed a motion to vacate his grand larceny conviction under New York Criminal Procedure Law § 440.10. *Id.* at 1. They insist that a stay pending resolution of the New York motion is warranted under the *Younger*[5] and *Colorado River*[6] abstention doctrines and based on application of the *Nautilus*[7] factors. *Id.* at 6–7, 14–16, 17–21.

On March 13, 2026, Magistrate Judge Hodges issued a Report recommending that the court deny the Ehresmans' motion to stay (the "Second Report"). [ECF No. 43.] She reasoned that the New York proceeding falls outside the three categories of cases to which *Younger* applies and that neither *Colorado River* abstention nor the *Nautilus* factors applied because the federal and state actions are not parallel. *Id.* at 20–22. She further found that the Ehresmans had not shown that

[4] The Ehresmans filed the operative amended motion to stay on February 26, 2026. [ECF No. 39.]

[5] *Younger v. Harris*, 401 U.S. 37 (1971).

[6] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

[7] *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371 (4th Cir. 1994).

judicial economy favored a stay or that they would suffer hardship without one. *Id.* at 18–19. The Ehresmans filed objections to the Second Report on April 7, 2026. [ECF No. 50.]

### 3. The Third Report

On April 21, 2026, Magistrate Judge Hodges entered a text order "authoriz[ing] limited discovery on whether Egan is a state actor" and directed Egan to respond to any discovery requests propounded by the Ehresmans by May 19, 2026. [ECF No. 52.] To that end, the Ehresmans served Egan with 25 requests to admit, 21 interrogatories, and 7 requests for production on April 25, 2026. [ECF No. 54-1.] They then deposed Egan on May 5, 2026. [ECF No. 54 at 2.] The following day, they purported to withdraw the April 25 discovery requests and served a second set of requests, consisting of 22 requests to admit, 16 interrogatories, and 8 requests for production. [ECF No. 54-2.] Defendants in response moved for a protective order to limit the number of interrogatories directed at Egan. [ECF No. 54.] They argued that the previously served and withdrawn interrogatories counted toward Rule 33(a)(1)'s 25-interrogatory limit, meaning that the Ehresmans could serve no more than four additional interrogatories on Egan. *Id.* at 2–3. On June 8, 2026, the Ehresmans moved to compel Egan to respond to the amended requests. [ECF No. 65.]

The Ehresmans also filed two additional motions in May 2026: one to amend the complaint, and a second to consolidate the case with *Galanos v. United States*, No. 0:26-cv-01964-SAL-TER (D.S.C.), a case brought by another former New York City police officer prosecuted in connection with the same fraud scheme. [ECF Nos. 55, 58.]

On July 14, 2026, Magistrate Judge Rogers[8] issued a Report addressing Defendants' motion to dismiss and the Ehresmans' motions to compel, to amend, and to consolidate (the "Third Report"). [ECF No. 68.] Magistrate Judge Rogers first denied the motion to compel, finding that

[8] The case was reassigned to Magistrate Judge Rogers on June 4, 2026. [ECF No. 63.]

the Ehresmans had failed to comply with Rule 37(a)(1)'s certification requirement, that they had been afforded ample opportunity to conduct jurisdictional discovery, and that their request for "full unlimited discovery in accordance with Fed. R. Civ. P. 26" was too vague to support relief. *Id.* at 12–13. Next, he recommended granting the motion to dismiss, which he converted to one for summary judgment under Rule 12(d). *Id.* at 13–14. He concluded that summary judgment was appropriate because (1) the Ehresmans had produced no evidence that Egan was a state actor for purposes of § 1983, (2) *Heck* barred their claims against both Egan and the United States, and (3) 42 U.S.C. §§ 405(g) and (h) barred judicial review of any claims challenging the SSA's redetermination process. *Id.* at 15–20. He then recommended denying the motion to amend as futile, reasoning that the claims against the proposed new defendants failed for the same reasons. *Id.* at 20–22. Finally, Magistrate Judge Rogers recommended denying the motion to consolidate as moot. *Id.* at 23. The Ehresmans filed objections to the Third Report on July 23, 2026. [ECF No. 69.]

## II. LEGAL STANDARDS

### A. Review of a Nondispositive Order

With certain exceptions, the Federal Magistrates Act authorizes district courts to designate a magistrate judge to "hear and determine any pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A). For nondispositive matters, the court reviews the magistrate judge's ruling under a "clearly erroneous or contrary to law" standard. *Id.*; *see also* Fed. R. Civ. P. 72(a). "A factual finding is clearly erroneous when [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 196 (4th Cir. 2009) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). A legal conclusion is "contrary to law" if the magistrate judge "fails to apply or misapplies relevant statutes, case law or rules of procedure."

*Buckner v. Harris*, No. 1:25-cv-12802-JFA, 2025 WL 3768238, at *2 (D.S.C. Dec. 30, 2025) (internal quotation marks omitted).

### B. Review of a Report and Recommendation

A report and recommendation carries no "presumptive weight," and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court reviews de novo "those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" or "recommit the matter . . . with instructions." 28 U.S.C. § 636(b)(1). "To trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). In the absence of specific objections, the court reviews only for clear error, *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and need not give any explanation for adopting the report, *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## III. DISCUSSION

The court now turns to the parties' pending motions, beginning with the Ehresmans' motion for entry of default against Egan.

### A. Motion for Entry of Default [ECF No. 18]

As mentioned, the Ehresmans moved for entry of default against Egan after he failed to answer within 21 days of being served. [ECF No. 18 at 6.] Magistrate Judge Hodges recommended denying the Ehresmans' motion, finding that Egan, as a federal employee, was entitled to Rule 12(a)(3)'s 60-day answer deadline. [ECF No. 25 at 6–12.]

The Ehresmans object to this conclusion. They argue that Magistrate Judge Hodges failed to properly analyze whether the alleged acts attributable to Egan were done "in connection with" his official duties.[9] [ECF No. 28 at 10–14.] In their view, Rule 12(a)(3) is inapplicable when, as here, a federal employee is alleged to have participated in an "unlawful conspiracy to circumvent federal law," since such conduct cannot be performed on the United States' behalf. *Id.* at 12–13.

The court, however, need not affirmatively resolve the Ehresmans' arguments concerning the scope of Rule 12(a)(3). Entry of default is appropriate only where a party "has failed to plead *or otherwise defend*." Fed. R. Civ. P. 55(a) (emphasis added). Regardless of which service deadline applied, Egan is not in default because he has "otherwise defended" this action by filing a motion to dismiss. *See, e.g.*, *Adeyola v. Reddy*, 718 F. Supp. 3d 464, 472 (E.D.N.C. 2024) ("[E]ven if service of process was effective as to defendant Reddy and he failed to respond to the complaint by the original deadline, he has not 'failed to plead or otherwise defend.' Defendant Reddy has entered an appearance, responded in opposition to the motion for entry of default, and filed a motion to dismiss."); *Tijerino v. Miller*, No. 23-7391, 2024 WL 7122704, at *1 (E.D. La. June 24, 2024) ("[U]nder Rule 55(a), the Defendants have otherwise defended against this action by filing

[9] The Ehresmans' objections to the First Report are rife with accusations of judicial bias on the part of Magistrate Judge Hodges. For example, they accuse her of engaging in "advocacy from the bench" and claim that she approached the case with "a preconceived view of the issues." ECF No. 28 at 4 n.3, 11; *see also id.* at 5–6 n.4 (claiming that Magistrate Judge Hodges had "openly demonstrat[ed] that her mind was made up and nothing that Plaintiffs had to say would make any difference"); *id.* at 8–9 ("[T]he Magistrate Judge's rulings time and again demonstrate that she is not interested in hearing from the parties . . . ." (footnote omitted)); *id.* at 8–9 n.5 ("[T]he record does raise the issue of bias, suggesting that the Magistrate Judge's impartiality might reasonably be questioned." (internal quotation marks omitted)); *id.* at 14 ("The Magistrate Judge's handling of the matter has been plainly imprudent. . . ."). These gratuitous comments are inconsistent with the standards of civility and professionalism expected of counsel who practice before the court. Attorneys are, of course, expected to advocate vigorously for their clients. But vigorous advocacy is not a license to accuse a judicial officer of bias simply because a ruling did not go the client's way.

the motion to dismiss. This is true even if the motion to dismiss was filed late—that is, more than 21 days after the Defendants were allegedly served with the complaint."). On this basis, the court overrules the Ehresmans' objections to the First Report[10] and denies their motion for entry of default.

### B. Motion to Compel [ECF No. 65]

After Defendants sought a protective order to limit the number of interrogatories directed at Egan, the Ehresmans moved the court to compel Egan to respond. Magistrate Judge Rogers denied the Ehresmans' motion to compel for several reasons, including their failure to satisfy Rule 37(a)(1)'s certification requirement. [ECF No. 68 at 12.]

Rule 37(a)(1) provides that a motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the . . . party failing to make . . . discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). "The purpose of this requirement is to encourage the parties to resolve their discovery disputes prior to resorting to judicial intervention." *Locke v. Murphy*, No. 5:22-CV-344-FL, 2024 WL 4612918, at *1 (E.D.N.C. Oct. 29, 2024).

The Federal Rules, however, do not "specify the consequences of failing to comply with the requirement to confer." 7 Moore's Federal Practice § 37.05[4] (3d ed. 2026). Courts are split on the appropriate remedy. Some have concluded that automatic denial of a motion to compel is not warranted and that the proper remedy instead is denying any request for expenses incurred in

[10] The Ehresmans also object to Magistrate Judge Hodges's decision to grant Defendants leave to file a surreply. [ECF Nos. 24; 25 at 7.] Whether to allow a surreply is a matter committed to the court's discretion. *Perez v. S.C. Dep't of Lab., Licensing & Regul.*, No. 3:17-3187-JFA, 2018 WL 2455093, at *4 n.10 (D.S.C. June 1, 2018). Magistrate Judge Hodges did not abuse her discretion here, particularly where the Ehresmans continued to insist that Egan was a state employee despite uncontroverted evidence to the contrary. *See* ECF Nos. 21-1, 21-2, 22-1.

making the motion. *See, e.g.*, *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 526 (S.D. W. Va. 2007). But others have held that failure to confer, standing alone, is sufficient grounds to deny a motion to compel. *See, e.g.*, *Patrick v. Teays Valley Trs., LLC*, 297 F.R.D. 248, 266 (N.D. W. Va. 2013). Because Magistrate Judge Rogers's ruling falls within this split in authority, the court cannot say it was "clearly erroneous" or "contrary to law." The court therefore affirms his order denying the motion to compel.

**C. Motion to Dismiss [ECF No. 27]**

**1. The court will treat Defendants' motion to dismiss as one for summary judgment**

As an initial matter, the court finds that Magistrate Judge Rogers appropriately converted Defendants' motion to dismiss into a motion for summary judgment. Under Rule 12(d), when "matters outside the pleadings are presented to and not excluded by the court" on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The rule further provides that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "[T]he term 'reasonable opportunity' requires that all parties be given 'some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery.'" *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (quoting *Johnson v. RAC Corp.*, 491 F.2d 510, 513 (4th Cir. 1974)).

Here, both sides submitted and referenced documents outside of the pleadings in connection with Defendants' motion to dismiss. The Ehresmans were thus on notice that conversion was possible. *Id.* ("When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment."). Had the Ehresmans thought that further discovery was necessary to adequately

oppose summary judgment, it was incumbent on them to submit a Rule 56(d) affidavit identifying the specific facts they hoped to uncover and explaining why those facts were necessary to oppose summary judgment.[11] *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) ("Because appropriate notice was ample, Laughlin's attorney had the responsibility, if he thought further discovery was necessary to adequately oppose summary judgment, to make a motion under Rule 56(f)."). But they failed to do so. Accordingly, Magistrate Judge Rogers did not err in treating Defendants' motion as one for summary judgment, and the court will proceed in the same manner.[12]

**2. The Ehresmans' claims are barred by *Heck***

The primary basis for Magistrate Judge Rogers's recommendation to grant summary judgment was that the *Heck* rule barred the Ehresmans' claims against Egan and the United States. *Heck* holds that a § 1983 claim "is not cognizable" if success on it "would necessarily imply the

---

[11] In objecting to the Third Report, the Ehresmans insist that they were not afforded an adequate opportunity to conduct discovery into Egan's possible status as a state actor. [ECF No. 69 at 4–6, 21–22]. Even if the Ehresmans' objections could be construed as the "functional equivalent" of a Rule 56(d) affidavit, *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002), the court would still deny any request to defer consideration of Defendants' motion. No amount of discovery into Egan's relationship with state officials would preclude *Heck*'s application to the Ehresmans' claims. *See Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) ("[A] court may deny a Rule 56(d) motion when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment.").

[12] Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might affect the outcome of the suit under the governing law." *Milla v. Brown*, 109 F.4th 222, 228 (4th Cir. 2024) (internal quotation marks omitted). In ruling on a motion for summary judgment, the court views "all facts and reasonable inferences in the light most favorable to the nonmoving party." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020). To withstand summary judgment, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

invalidity of [the plaintiff's] conviction or sentence," "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated."[13] 512 U.S. at 487. Here, the Ehresmans have conceded that success on their claims would necessarily imply the invalidity of Mr. Ehresman's grand larceny conviction. *See* ECF No. 47 at 25 ("Given the nature of Plaintiff's contentions[,] . . . a finding of liability and an award of damages in Plaintiffs' favor on any of the remaining claims would necessarily require a conclusion that Mr. Ehresman was wrongfully convicted.").[14] Thus, the central question is whether the SSA's redetermination decision satisfies *Heck*'s favorable-termination requirement. It does not.

To establish favorable termination, "a § 1983 plaintiff must prove that the conviction or sentence has been [(1)] reversed on direct appeal, [(2)] expunged by executive order, [(3)] declared invalid by a state tribunal authorized to make such determination, or [(4)] called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486–87. None of these conditions have been met. The SSA's redetermination of Mr. Ehresman's eligibility for SSDI benefits did not reverse his grand larceny conviction, was not an act of executive clemency, did not involve a federal writ of habeas corpus, and was not issued by a state tribunal with authority to invalidate a criminal judgment. Mr. Ehresman's conviction remains intact, and the fact an ALJ found him disabled as of the date of the original award after disregarding evidence tainted by fraud does not undermine the conviction's validity in any way.

---

[13] Although *Heck* arose in the § 1983 context, its holding has been extended to claims under the FTCA. *See, e.g.*, *Liounis v. United States*, No. 21-1946, 2021 WL 6101842, at *1 (4th Cir. Dec. 21, 2021); *O'Brien v. U.S. Fed. Gov't*, 763 F. App'x 157, 160 (3d Cir. 2019); *Erlin v. United States*, 364 F.3d 1127, 1131–32 (9th Cir. 2004); *Parris v. United States*, 45 F.3d 383, 385 (10th Cir. 1995).

[14] The Ehresmans agree to dismissal of their false arrest/false imprisonment and bill-of-attainder claims (Counts Four and Ten). [ECF No. 47 at 35.]

Resisting this conclusion, the Ehresmans cite *United Capitol Insurance Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998), for the proposition that "*Heck* deliberately declined to prescribe an exclusive means of satisfying its favorable-termination requirement." [ECF No. 69 at 9.] *Kapiloff*, however, said no such thing. That case involved an insurance coverage dispute arising under Maryland law—it had nothing to do with *Heck* or the favorable-termination requirement.[15] The Ehresmans' reliance on the Supreme Court's recent decision in *Olivier v. City of Brandon, Mississippi*, 607 U.S. 552 (2026), is also misplaced. *Olivier* held only that *Heck* does not impose a barrier to a § 1983 litigant seeking "a purely prospective remedy." *Id.* at 556. But the Ehresmans are not seeking any "forward-looking relief" in this lawsuit, *id.*; they seek only "to recover damages for [Mr. Ehresman's] allegedly unconstitutional conviction." *Heck*, 512 U.S. at 486. Thus, *Olivier* is of no help to the Ehresmans. *See Olivier*, 607 U.S. at 556 (reaffirming that "*Heck* prohibits the use of § 1983 to challenge the validity of a prior conviction or sentence so as to obtain release from custody or monetary damages").

At bottom, because Mr. Ehresman's conviction has not been "reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus," the Ehresmans' claims are not cognizable and must be dismissed. *Heck*, 512 U.S. at 489. The court therefore overrules the Ehresmans' objections to this portion of the Third Report.

**D. Motion to Stay [ECF No. 39]**

The court next considers the Ehresmans' motion for a stay pending resolution of Mr. Ehresman's motion to vacate in New York state court. The court agrees with Magistrate Judge

---

[15] Counsel is reminded of her obligation under Rule 11 to verify the accuracy of legal citations before presenting them to the court.

Hodges that a stay is not warranted, albeit for reasons different from those articulated in the Second Report.

In *Edwards v. Balisok*, the Supreme Court held that the district court erred in staying, rather than dismissing, a *Heck*-barred § 1983 suit challenging the procedures used to deprive the plaintiff of good-time credits while he sought restoration of the credits in a state-court action. 520 U.S. 641, 644, 649 (1997). "[Section] 1983 contains no judicially imposed exhaustion requirement," the Court explained. *Id.* at 649. "Absent some other bar to the suit, a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed." *Id.* That reasoning controls here. Because the Ehresmans' claims are currently barred by *Heck*, it would be inappropriate to stay this matter while Mr. Ehresman pursues a motion to vacate in New York. *See Williams v. McMaster*, No. 1:26-cv-00157-RMG, 2026 WL 1132828, at *5 (D.S.C. Apr. 27, 2026) (declining to stay *Heck*-barred claims pending resolution of the plaintiff's post-conviction relief appeal because the court was "required to dismiss" under *Edwards*); *McCall v. McAlhaney*, No. 2:15-cv-01011-TLW-MGB, 2017 WL 3981153, at *6 (D.S.C. July 24, 2017) (stating that *Heck* "requir[es] dismissal 'unless the plaintiff can demonstrate that the conviction or sentence has *already* been invalidated'" (quoting *Heck*, 512 U.S. at 487) (emphasis in original)).

Accordingly, the court overrules the Ehresmans' objections to the Second Report and denies their motion for a stay.

**E. Motion to Amend [ECF No. 55]**

Finally, the Ehresmans move for leave to amend their complaint. Their proposed amended complaint deletes the false arrest/false imprisonment and bill-of-attainder claims (Counts Four and Ten) and adds John and Jane Doe officials with the SSA and Donato Siciliano, an investigator with the Manhattan DA, as defendants. *See* ECF No. 55-1 ¶¶ 14, 16, 203–12. Magistrate Judge Rogers

recommended denying the Ehresmans leave to amend, finding that amendment would be futile. [ECF No. 68 at 20–22.]

Rule 15(a)(2) instructs that courts "should freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave need not be granted if amendment would be futile. *See Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986). Here, the Ehresmans' proposed amendment is futile because adding Siciliano and the Doe officials as defendants does not solve the *Heck*-bar problem. Consequently, Magistrate Judge Rogers did not err in recommending that the court deny leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the court adopts the First, Second, and Third Reports, ECF Nos. 25, 43, 68, as modified herein; denies the Ehresmans' motion for entry of default, ECF No. 18; grants Defendants' motion to dismiss, ECF No. 27; denies the Ehresmans' motion to stay, ECF No. 39; denies the Ehresmans' motion to amend, ECF No. 55; denies the Ehresmans' motion to consolidate as moot, ECF No. 58; affirms Magistrate Judge Hodges's order granting Defendants' motion for leave to file a surreply, ECF No. 24; and affirms Magistrate Judge Rogers's order denying the Ehresmans' motion to compel, ECF No. 65. The Ehresmans' claims are dismissed without prejudice. *See, e.g.*, *Bowman v. Mann*, 683 F. App'x 258 (4th Cir. 2017).

**IT IS SO ORDERED.**

Sherri A. Lydon

September 25, 2026
Columbia, South Carolina

Sherri A. Lydon
United States District Judge